## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW MEXICO

Stacy Vigil,

        Plaintiff

v.                                                          Civ. 97-00151 BB/JHG

Mesa Vista Consolidated School
District, the Mesa Vista Schools
Board of Education, Jerry Villareal,
Raul Guerrero, and Vernon Jaramillo,
each individually and in his official
capacity,

        Defendants.

## <u>MEMORANDUM OPINION</u>

THIS MATTER comes before the court on Defendants Mesa Vista Consolidated School District, the Board of Education and superintendent Vernon Jaramillo's April 24, 1997 motion to dismiss (Doc. 16), Defendant Guerrero's June 11, 1997 motion to dismiss (Doc. 25), and Defendant Villareal's July 25, 1997 motion to dismiss (Doc. 37). Having reviewed the submissions of the parties and the relevant law, the Court finds that Defendants' motions should be GRANTED IN PART, and DENIED IN PART.

## I.      Facts and Procedural History

In addressing a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court is required to accept as true all well-pleaded facts alleged in Plaintiff's complaint. <u>Phelps v. Wichita Eagle-Beacon</u>, 886 F.2d 1262, 1266 (10th Cir. 1989). The Court will accordingly accept the following facts as true for the purposes of this opinion.

This case arises out of alleged sexual harassment/sexual abuse of a student by a teacher, and the failure of the school system to take corrective action. Plaintiff Stacy Vigil, a 17-year-old student, attended classes in her junior year at Mesa Vista High School in New Mexico when the harassment began.  In March 1994, Defendant Villareal, Plaintiff's physical education teacher and boys basketball coach at Mesa Vista High School, began discussing his past sexual relationships with Plaintiff during school hours. Villareal told Plaintiff he really liked her and wanted to have a sexual relationship because they could make each other feel "very good."  The conversation scared Plaintiff and she ran away and hid in the girl's locker room.  The next day, Villareal asked Plaintiff if she would have sex with him, and invited her to share a room with him in Albuquerque during the boys state basketball tournament.  Plaintiff reacted by running away again.

Villareal persisted, and over the next few days asked Plaintiff several times to bring equipment to his school office. Afraid to be alone with him, Plaintiff brought the equipment, bringing a friend with her each time. Despite these efforts, Plaintiff was alone with Villareal after bringing papers to his office several days later.  Villareal shut the door, then tried to hug and kiss Plaintiff. Plaintiff resisted, then ran out of the office.  Over the next few days, Villareal continued to try and hug and kiss Plaintiff, and during one gym class, he picked Plaintiff up from behind and spun her around.

On March 21, 1994, Plaintiff told her school counselor, Josie Velasquez, that Villareal had been sexually harassing her during the past few weeks.  At the time the principal, Defendant Raul Guerrero, was out of town, so Velasquez informed Plaintiff she would speak with  him when he returned.  However, when Guerrero returned a few days later, he never contacted Plaintiff regarding the results of her complaint.  Meanwhile, in the following weeks Plaintiff continued to go to school and would run away from Villareal whenever she saw him. On April 7, 1994, Plaintiff told a counselor

from another school about the sexual abuse/harassment.  The next day, that counselor and Plaintiff

met with Guerrero to discuss the sexual abuse/harassment.  During the meeting, Plaintiff reported the

details of Villareal's harassment.  In response,  Guerrero told Plaintiff to write a letter to the Mesa

Vista school superintendent, Defendant Vernon Jaramillo.  As superintendent,  Jaramillo directly

supervised school district employees, including Defendants Guerrero and Villareal. The counselor,

on Plaintiff's behalf, objected and informed Guerrero he was required to report the incident to the

New Mexico Department of Human Services.  Guerrero responded by instructing the counselor not

to report the matter because he would take care of it.

Soon after the meeting, Guerrero met with Plaintiff, her parents, Velasquez and Villareal. At

this meeting, Guerrero turned on a tape recorder and asked Plaintiff to explain her allegations of

sexual abuse/harassment.  After Plaintiff described Villareal's actions, Guerrero told Plaintiff he

would conduct a thorough investigation and that Plaintiff should forget everything that happened and

pretend the incidents never occurred.  A few days later, Plaintiff and her parents wrote directly to

superintendent  Jaramillo and requested a formal investigation of her sexual harassment complaint.

As a result, Mesa Vista Consolidated School District ("School District") hired an investigator who

briefly discussed the harassment with Plaintiff on one occasion. However, neither the School District,

nor the Mesa Vista Schools Board of Education ("Board") ever advised Plaintiff of the outcome of

that investigation. Plaintiff's parents later requested  this information, but neither Plaintiff nor her

parents received any response.  Further, Villareal continued to teach at the high school.  Plaintiff also

claims other students made claims of sexual harassment against Villareal before he harassed her in

March.  Despite these accusations, apparently reported to school officials, no action was taken.

As a result, Plaintiff, afraid of further confrontations with Villareal and disgusted with school officials' failure to correct the problem, transferred to another high school for her senior year. This required her to travel 80 miles round-trip each day to attend Espanola High School. Plaintiff then filed suit alleging the School District, the Board, and Defendants Villareal, Guerrero and Jaramillo sexually discriminated against her in violation of 20 U.S.C. § 1681 (Title IX) (Count I); Defendants violated Plaintiff's rights pursuant to the Due Process Clause of the Fourteenth Amendment and 42 U.S.C. § 1983 (Count II); Defendants violated Plaintiff's rights pursuant to the Equal Protection Clause of the Fourteenth Amendment and 42 U.S.C. § 1983 (Count III); and Defendant Villareal committed battery against Plaintiff in violation of New Mexico state law (Count IV).

## II.    Analysis

Defendants filed motions to dismiss claiming immunity under the Eleventh Amendment, lack of viable claims under Title IX,  constitutional violations of due process and equal protection under 42 U.S.C. § 1983, and  qualified immunity under heightened pleading standards.  Defendants also challenge their liability as either individuals, supervisors or policy makers under those statutes.

In addressing the motions to dismiss, the Court generally must accept as true all facts alleged in Plaintiff's complaint.  However, the Court does not accept conclusory allegations as true, although a party's intent or discriminatory animus may be alleged generally. Phelps, 886 F.2d at 1269-70; Cayman Exploration Corp. v. United Gas Pipe Line, 873 F.2d 1357, 1359 (10th Cir. 1989).  In determining whether the complaint states a claim, this Court is not limited to the legal theories argued by Plaintiff, but must examine the complaint to determine whether the allegations provide for relief under any theory.  See Perington Wholesale, Inc. v. Burger King Corp., 631 F.2d 1369, 1375 fn. 5 (10th Cir. 1980).  This Court will dismiss the complaint, or claims contained in the complaint, only

if it appears that Plaintiff can prove no set of facts in support of her claim that would entitle her to relief.  Phelps, 886 F.2d at 1266.  The Court will consider the motions in light of the these standards.

### A.        Eleventh Amendment Immunity

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  It thus "largely shields States from suit in federal court without their consent, leaving parties with claims against a State to present them, if the State permits, in the State's own tribunals."  Hess v. Port Auth. Trans-Hudson Corp., 513 U.S. 30, 39 (1994).  Eleventh Amendment immunity, however, "extends only to the states and governmental entities that are 'arms of the state.'"  Watson v. University of Utah Med. Ctr., 75 F.3d 569, 574 (10th Cir. 1996) (quoting Ambus v. Granite Bd. of Educ., 995 F.2d 992, 994 (10th Cir. 1993) (en banc)).

Until recently, the New Mexico Supreme Court and the Tenth Circuit were in direct conflict on the question of whether the school districts of New Mexico, through the actions of its school boards, are arms of the state and subject to Eleventh Amendment immunity.  The New Mexico Supreme Court held that a local school board is not an arm of the state entitled to Eleventh Amendment immunity and that such a board is a "person" under 42 U.S.C. § 1983.  Daddow v. Carlsbad Mun. Sch. Dist., 120 N.M. 97, 898 P.2d 1235 (N.M. 1995) cert denied, --- U.S. ---, 116 S.Ct. 753, 133 L.Ed.2d 700 (1996).  Previously, the Tenth Circuit had reached the opposite conclusion in Martinez v. Bd. of Educ., 748 F.2d 1393 (10th Cir. 1984).  As the motions to dismiss were pending before this Court, however, the Tenth Circuit resolved this conflict by reversing Martinez in Duke v. Grady Mun. Schools, --- F.3d---, 1997 WL 644019 (10th Cir. 1997).  In Duke,

the Tenth Circuit agreed with the New Mexico Supreme Court that the school boards have considerable local autonomy and control. Id. at 6.  After examining the state statutes, the state constitution and state case law, the Tenth Circuit concluded that school districts and their governing boards in New Mexico are not arms of the state entitled to Eleventh Amendment immunity. Id.

Based on Duke, the Court will therefore deny all Defendants' motions to dismiss on Eleventh Immunity grounds.  Further, the Court also rejects the Board's motion to dismiss Mesa Vista Valley School District as a non-suable legal entity.   Under Duke and Daddow, school districts and their governing boards are recognized as political subdivisions or local public bodies and not arms of the state. Duke at 7, Daddow at 1243. However, as those cases recognize, the character and definition of an entity is determined by enabling and implementing legislation. Duke at 5. In New Mexico, as defined in the Public School Code, a school district is "an area of land established as a political subdivision of the state," N.M. Stat. Ann. § 22-1-2(k), of which the local board is its governing body. § 22-1-2(L). As a practical matter, then, a suit against a school district is really a suit against its governing school board, and vice versa.  As a result, the Court finds no legal consequences where, as here, the Board answers a complaint on behalf of the School District.

**B.     Title IX claims**

**1.     Individual liability**

Defendants' Jaramillo, Guerrero, and Villareal claim Title IX does not allow liability for the acts of individuals. The Court agrees. Title IX applies to educational institutions or programs that receive federal funds, and states that no person shall be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity on the basis of that person's sex.  20 U.S.C. § 1681(a).  The Court recognizes Plaintiff's Title IX cause of action has its

origin in Franklin v. Gwinnett County Public Schools, 503 U.S. 60 (1992) (recognizing private litigants' right to recover money damages when teachers sexually abuse/harass students).  However, the Franklin court did not determine whether individuals may incur Title IX liability and what liability if any, the school district has for the acts of its teachers and students.  The majority of courts considering the issue reject individual liability, finding a damage remedy is only available against an "education program or activity receiving Federal Financial Assistance." Lillard v. Shelby County Bd. of Educ., 76 F.3d 716, 730 (6th Cir. 1996).  This Court adopted the majority view in Philliou v. the Regents of the University of New Mexico, No. Civ. 96-1019 BB/LFG (filed August 19 , 1997) (holding Title IX does not apply to claims against individuals).  The Court therefore will dismiss Plaintiff's Title IX claims against Jaramillo, Guerrero and Villareal in their individual capacities and will not address whether they are entitled to qualified immunity under Title IX.

The Court also notes a split among the circuit courts on the applicable standard of attributing liability to a school district when the acts of its teachers and students result in sexual abuse or create a hostile environment by sexual harassment.  See Philliou at 8-10 (discussing use of Title VII in developing "actual knowledge," and "knew or should have known" standards in Title IX fellow-student sexual harassment claim).  In all, the circuit courts identify three theories by which the school district may be liable for a teacher's sexual abuse/harassment of a student.  See Rosa H. v. San Elizario Independent Sch. Dist., 106 F.3d 648, 652 (5th Cir. 1997).  These include an agency theory, a Title VII theory that applies principles of hostile work environment sexual harassment, and a more restrictive theory that requires actual, intentional discrimination.  Id.  The Tenth Circuit has not decided the issue, identifying only the elements necessary to succeed on a Title IX claim of sexual

harassment.  Seamons v. Snow, 84 F.3d 1226, 1232 (10th Cir. 1996).[1]  At this time, the Court does

not need to address that standard, finding that Plaintiff 's allegations form the basis of institutional

liability under each theory.  As a result, the School District and Board remain liable under Title IX

for the actions of the individual defendants.

**C.       42 U.S.C. § 1983 claims and Qualified Immunity**

The Tenth Circuit does recognize individual liability for sexual abuse and sexual harassment

as constitutional violations under 42 U.S.C. § 1983.  When a teacher physically abuses a student

---

[1]

The elements of a Title IX hostile educational environment cause of action are: (1) that the plaintiff is a member of a protected group; and (2) was subjected to unwelcome harassment based on sex; (3) that the sexual harassment was sufficiently severe or pervasive so as unreasonably to alter the conditions of the plaintiff's education and to create an abusive educational environment; and (4) that some basis for institutional liability has been established.  Seamons, 84 F.3d at 1232.  The circuit courts split on the proper theory used to establish the fourth element, largely due to varying fact patterns.  See Kinman v. Omaha Pub. Sch. Dist., 94 F.3d 463, 468 (8th Cir. 1996) (applying Title VII standards of institutional liability to hostile environment sexual harassment cases involving a teacher's harassment of a student).  In Philliou, this Court determined that a version of the Title VII hostile environment test should be applied to cases involving sexual harassment by a student against a fellow student.  However, the Court did not determine whether the Defendant University of New Mexico must have actual knowledge of the harassment or whether it should have known of the harassment because the allegations of the complaint met the higher actual knowledge standard.  In the case at bar, Plaintiff's allegations show the principal and superintendent had actual knowledge of the abuse/harassment which also establishes liability under the fourth element.  See Rosa H v. San Elizario Independent Sch. Dist., 106 F.3d 648, 658-60 (5th Cir. 1997) (discussing actual knowledge standard and holding school district could be liable for teacher-student sexual harassment under Title IX only if a school official who had actual knowledge of the abuse was invested by the school board with the duty to supervise the employee and the power to take action that would end such abuse and failed to do so). The Court also notes that Plaintiff establishes liability under the fourth element if agency principals were applied.  See Kracunas v. Iona College, 119 F.3d 80, 1997 WL 376912 at 8 (2d Cir. 1997) (holding that if a professor has supervisory relationship over a student, and the professor capitalizes on the supervisory relationship to further the harassment of the student, the college is liable for the professor's conduct. If a professor does not rely upon his actual or apparent authority to carry out the harassment, the college will be liable only if it provided no reasonable avenue for complaint or if it knew, or in the exercise of reasonable care, should have known, about the harassment yet failed to take appropriate remedial action).

through sexual acts, the courts analyze the claim under substantive due process as an invasion of bodily integrity.  Abeyta v. Chama Valley Independent Sch. Dist., 77 F.3d 1253, 1255 (10th Cir. 1996). When the acts involve harassment based on sex,  the courts analyze the claim under equal protection. Whitney v. State of New Mexico, 113 F.3d 1170, 1174 (10th Cir. 1997).  Plaintiff alleges violations of both constitutional rights while Defendants argue Plaintiff fails to state a claim under heightened pleading standards and that they are entitled to qualified immunity.

### 1.        Plaintiff's claims against Defendant Villareal

Plaintiff alleges Villareal violated her rights to be free from an invasion of bodily integrity through several acts of physical contact and verbal abuse and that his sexual harassment violated her constitutional right to equal protection.  Plaintiff also alleges Villareal's conduct results in battery under New Mexico state law.   Defendant Villareal argues Plaintiff's allegations show only psychological harm, which does not rise to a constitutional deprivation of substantive due process under Abeyta, 77 F.3d at 1257.  Defendant Villareal also argues he is entitled to qualified immunity and that New Mexico has not waived his immunity as a public employee for claims of battery under the Tort Claims Act.[2]

Section 1983 created a federal cause of action for damages to vindicate alleged violation of federal law committed by individuals acting "under color of state law."  42 U.S.C. § 1983; see also Wyatt v. Cole, 504 U.S. 158, 161 (1992) ("[T]he purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to

---

[2]

The Court notes that Villareal seeks dismissal of Counts I, II and IV, which does not include Plaintiff's claim Villareal violated her constitutional right to equal protection under Count III. However, Villareal seeks qualified immunity under 42 U.S.C. § 1983 in general, so the Court will address his liability under Count III in this analysis as well.

provide relief to victims if such deterrence fails.")  An individual employed by the state who violates another individual's federal rights will generally do so by virtue of the authority vested in them under state law.  Jojola v. Chavez, 55 F.3d 488, 493 (10th Cir. 1995).  An otherwise private tort, however, is not committed under color of law simply because the tortfeasor is an employee of the state.  Id. There must be a "real nexus" between the employee's use or misuse of their authority as a public employee, and the violation committed by the defendant.  D.T. by M.T. v. Independent Sch. Dist. No. 16, 894 F.2d 1176, 1188 (10th Cir. 1990).  When a school teacher commits acts of sexual abuse and sexual harassment against a student on school grounds in the performance of his official duties, the student may maintain a 42 U.S.C. § 1983 civil rights action against the school district and its officials for damages.  Id. at 1189 (citing Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720 (3d Cir.1989).

As to Defendant Villareal, the Court finds Plaintiff's allegations sustain a claim under 42 U.S.C. § 1983's "real nexus" requirement.  Plaintiff states the abuse and sexual harassment occurred on school grounds during school hours and during regularly required gym classes.  The Court will therefore deny Defendant Villareal's motion to dismiss on this element and further analyze his claim for qualified immunity.

### 1. A.   Defendant Villareal's claim of qualified immunity

"As a threshold inquiry to qualified immunity [the court] first must determine whether plaintiff's allegations, even if accepted as true, state a claim for violation of any rights secured by the United States Constitution." Maldonado v. Josey, 975 F.2d 727, 729 (10th Cir. 1992).  Sexual assault or molestation by a school teacher violates a student's substantive due process rights.  Id. at 730-31. A teacher's sexual molestation of a student is an intrusion of the student's bodily integrity. Stoneking, 882 F.2d at 727.  Absent any allegations of sexual assault, molestation or touching of any

sort, the conduct falls short of a constitutionally actionable sexual harassment claim under substantive due process.  Abeyta, 77 F.3d at 1255-56.

Defendant Villareal argues that Plaintiff has alleged only psychological harm and therefore has not stated a constitutional claim of substantive due process as the Abeyta court held.  The Court disagrees.  Plaintiff alleges Villareal initially stated he wanted to have sex with Plaintiff, and even invited Plaintiff to share a room with him during the state basketball tournament.  Despite Plaintiff's objection, Villareal persisted and during one encounter a few days later, actually tried to hug and kiss Plaintiff when she was alone with him in his school office.  Villareal continued his sexual advances over the next few days, and during gym class, picked Plaintiff up and spun her around. At this stage in the proceedings, the Court finds Plaintiff's allegations show Villareal violated Plaintiff's rights of substantive due process by intruding on Plaintiff's bodily integrity.

The Tenth Circuit also recognizes that sexual harassment is actionable under § 1983 as a violation of the Equal Protection Clause where Plaintiff alleges and proves defendant uses his government position to exert influence and physical control to assert sexual harassment. Whitney, 113 F.3d at 1174.  The critical inquiry is whether the defendant abuses the position given him by the state to discriminate against the plaintiff because of her sex.  Noland v. McAdoo, 39 F.3d 269, 271 (10th Cir. 1994). Evidence of repeated sexual advances, invitations for sex, and contact for sexual gratification shows conduct of sexual discrimination sufficient to deprive an individual of the right to equal protection under the laws.  Starrett v. Wadley, 876 F.2d 808, 815 (10th Cir. 1989).

Under this precedent, the Court finds Plaintiff's allegations of sexual harassment by Villareal are sufficient to state a claim for relief under § 1983.  As noted *supra*, Villareal used his position as Plaintiff's gym teacher to ask her for sex.  When Plaintiff declined, Villareal persisted by asking her

to come to his office, and when they were alone, tried to hug and kiss her. Such actions in the school environment-- where a student is frequently under the direct supervision of her teacher--can violate Plaintiff's Fourteenth Amendment right to Equal Protection.

Finding Plaintiff 's allegations demonstrate Villareal violated her constitutional rights of substantive due process and equal protection, the Court will next examine whether those rights were clearly established at the time of the conduct at issue. Albright v. Rodriguez, 51 F.3d 1531, 1534 (10th Cir. 1995).  This twofold inquiry determines whether or not a public official is entitled to qualified immunity, by first identifying legal principles governing analogous factual situations at the time the alleged constitutional violation occurred, and second, allowing the court to determine whether public officials should have related this established law to the situation before them. Stoneking, 882 F.2d at 729.  The Tenth Circuit holds that for a right to be "clearly established" in a particularized sense, there must ordinarily be a Supreme Court or Tenth Circuit decision on point, or "clearly established weight of authority" from other courts.  Wilson v. Meeks, 52 F.3d 1547, 1552 (10th Cir. 1995).

Under the second prong, the Tenth Circuit held sexual harassment of the sort alleged by Plaintiff can violate the right to equal protection of the laws as early as 1989.  Starrett, 872 F.2d at 814.   Contrary to Villareal's contention that purely psychological injury cannot sustain a constitutional claim, the Starrett court clearly recognized an immediate superior could be liable for sexual harassment on equal protection grounds.  The Court will therefore deny Defendant Villareal's motion for qualified immunity on Plaintiff's equal protection claim. Finding Plaintiff alleges sufficient facts to support claims of actual physical abuse, the Court will also deny Villareal's motion for qualified immunity on substantive due process grounds--a right clearly established by the circuit

courts prior to 1989.  Doe v. Taylor Independent Sch. Dist., 15 F.3d 443, 450-52 (5th Cir. 1994)

cert. denied 115 S. Ct. 70 (1994).

### 1. B.    Plaintiff's state law claim of battery against Villareal

The New Mexico Tort Claims Act grants immunity from tort liability to "[a] governmental

entity and any public employee while acting within the scope of duty" except as waived by N.M. Stat.

Ann. 41-4-5 through 41-4-12.  Id.  Villareal argues that none of the waiver sections apply and he is

entitled to immunity.  The Court disagrees.  As argued by Plaintiff, Villareal is not entitled to the

Act's immunity unless he commits a tort in the course and scope of his employment.  Because the

alleged battery occurred while sexually abusing a student, an act clearly beyond his duties as a

teacher, the Court finds the Act's immunity provision inapplicable. See Rivera v. New Mexico

Highway Transport. Dept., 115 N.M. 562, 563-64, 855 P.2d 136, 137-38 (Ct. App.) cert denied 115

N. M. 545, 854 P.2d 872 (1993) (Transportation Department not liable under NMSA when acts of

employee occurred outside the scope of his employment); Candelaria v. Robinson, 93 N.M. 786, 792,

606 P.2d 196, 202 (Ct. App. 1980) (when alleged defamatory remarks made outside district

attorney's scope of employment, Act's immunity provisions do not apply).  The Court will therefore

deny Villareal's motion to dismiss the claim of battery.

### 2.    Plaintiff's 42 U.S.C. § 1983 claims against Defendants Guerrero and Jaramillo

Having concluded that Villareal's sexual abuse/harassment of Plaintiff violated her

constitutional rights of due process and equal protection, the Court must decide whether his

supervisors, principal Guerrero and superintendent Jaramillo, are liable under § 1983.  Specifically,

Plaintiff alleges that Guerrero and Jaramillo failed to properly screen Villareal before hiring him and

failed to take prompt, effective remedial action by investigating her complaints of Villareal's sexual

abuse and harassment.  Plaintiff also alleges Guerrero could legally establish policy with respect to the daily operation of the school including the supervision and retention of teachers and that Jaramillo has been delegated similar responsibilities. Defendants argue that they have not been delegated final authority and that their actions do not rise to the level of a constitutional violation.

In addressing municipal liability the Supreme Court has stated that "proper analysis requires us to separate two different issues when a § 1983 claim is asserted . . . (1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation." Collins v. City of Harker Heights, 503 U.S. 115, 120 (1992). See also Doe v. Claiborne County Tenn., 103 F.3d 495, 504-13 (6th Cir. 1996) (addressing § 1983 "supervisory liability" of individual school board members, and principal for sexual abuse by teacher).  The Court will first address whether Guerrero and Jaramillo's actions support a claim of deliberate indifference to Plaintiff's constitutional rights to be free from sexual abuse/harassment, and if so, whether they are entitled to qualified immunity.   The Court will then determine whether the School District, through the Board, is liable for these acts under § 1983 municipal liability standards, including official custom or policy.

Liability under § 1983 must be predicated upon a "deliberate" deprivation of constitutional rights by the defendants, and not on negligence.  Woodward v. City of Worland, 977 F.2d 1392, 1399 (10th Cir. 1992).  Therefore to impose personal liability on defendants Guerrero and Jaramillo, Plaintiff must allege, and prove: (1) that Defendants received notice of a pattern of violations of female students' constitutional rights to be free from sexual abuse/harassment; (2) that the defendants displayed deliberate indifference to or tacitly authorized those acts; (3) that the defendants failed to take proper remedial steps; and (4) that failure caused Plaintiff's injuries.   Gates v. Unified Sch. Dist.

14

No. 449, 996 F.2d 1035, 1037 (10th Cir. 1993);  Doe v. Taylor Independent Sch. Dist., 15 F.3d 443,

454 (5th Cir. 1994) (applying similar standard).  Further, a plaintiff must separately establish the

"color of law" requirement under § 1983 by identifying some cognizable duty that the state or federal

law imposes upon the alleged "enactor."  Doe v. Claiborne County, 103 F.3d at 512. Public officials

with such notice of misbehavior by their subordinates must not take action which communicates that

they encourage or condone such behavior.  Stoneking, 882 F.2d at 725, 729. The Court will address

Plaintiff's claim of supervisory liability against Guerrero and Jaramillo in light of these standards.

Both Defendants argue they are not official policy makers and therefore not subject to § 1983

liability.  That argument applies to municipal liability while Plaintiff alleges these two defendants are

liable as supervisors. Under the analysis set forth in Stoneking, Claiborne County and Collins, the

proper question is whether they have authority under "color of law" to take prompt remedial action

after receiving notice of the abuse/harassment  by Plaintiff.  Their statutory duties to supervise and

evaluate educational programs certainly encompass a duty to investigate after receiving a complaint

of abuse/harassment under Sections 22-10-5, 22-10-6, N.M.S.A. (Repl. Pam. 1993).[3]

---

[3]

Section 22-10-5 provides that "Each certified school instructor in a public school or state agency and each certified school administrator in a public school shall . . . (B) enforce all laws and regulations applicable to his public school and school district or to the educational program of the state agency; . . . (D) exercise supervision over students on property belonging to the public school state agency and while the students are under the control of the public school or state agency . . . " Id.

Section 22-10-6 provides that "The position of school principal is hereby recognized.  In addition to other duties prescribed by law, a public school principal shall be responsible for: (A) assuming administrative responsibility and instructional leadership, under the supervision of the local superintendent of schools, with regard to the discipline of students and the planning, operation, supervision and evaluation of the educational program of the school to which he is assigned. (B) submitting recommendations to the local superintendent concerning evaluation, promotion, transfer and dismissal of all personnel assigned to the school to which he is assigned; and (C) performing any other duties assigned him by the local superintendent pursuant to local school board policies. . ."

Both Defendants then argue that they received notice of only an isolated incident of abuse/harassment and Plaintiff fails to show a pattern of misconduct as required under <u>Gates'</u> first prong. The Court disagrees with Defendants' contention. Plaintiff alleges several incidents in which Villareal sexually abused/harassed Plaintiff over a period of several weeks.  Guerrero, through meetings with Plaintiff and later with Plaintiff's parents, knew of this conduct. <u>See</u> <u>generally</u> <u>Harris v. Maynard</u>, 843 F.2d 414, (10th Cir. 1988) (ignoring mother's phone calls informing prison officials of prison inmate's threats to her inmate son and failure of prison officials to separate inmates results in proper notice to support claim of deliberate indifference). Likewise, Jaramillo received appropriate notice of Villareal's misconduct through a letter he received from Plaintiff's parents. As high level administrators/supervisors, both individuals were authorized by state law to address the problem. Plaintiff thus satisfies <u>Gates'</u> first requirement as to both Defendant Guerrero and Jaramillo.

Both Defendants also allege their conduct does not support a constitutional claim of deliberate indifference as required under <u>Gates'</u> second prong.  To prove deliberate indifference, there must be evidence demonstrating a higher degree of fault than negligence, but less than that required to demonstrate intentional and malicious intent.  <u>Berry v. City of Muskogee, Okla.</u>, 900 F.2d 1489 (10th Cir. 1990).  At a minimum, a plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate.  <u>Doe v. Claiborne County</u>, 103 F.3d at 511; <u>Langley v. Adams County</u>, 987 F.2d 1473, 1481 (10th Cir. 1993).  A plaintiff must also show that, in light of the information the defendants possessed, the teacher who engaged in the sexual abuse showed a strong likelihood that he would again attempt to sexually abuse this student or other students, such that the failure to take adequate

16

precautions amounted to deliberate indifference.  Doe v. Claiborne County, 103 F.3d at 512 (citing

Barber v. City of Salem, 953 F.2d 232, 240 (6th Cir. 1992)).

At this stage of the proceedings, the Court finds Guerrero's actions support Plaintiff's claim

of deliberate indifference against him.  By requiring her to write a letter to superintendent Jaramillo,

and by failing to remove Plaintiff from Villareal's classes or remove Villareal from student contact,

Guerrero ensured a "strong likelihood" that the abuse/harassment would continue.  Doe v. Claiborne

County, 103 F.3d at 495.  In addition, Plaintiff's allegations that Guerrero forced her to repeat the

accusations of abuse on a tape recorder with Villareal present conceivably may have perpetuated an

abusive environment.  Further, Plaintiff's allegations show Guerrero failed  to conduct a prompt

investigation as required under Gates' third prong. As Plaintiff alleges the misconduct continued and

she was forced to leave school, the Court finds Plaintiff also satisfies Gates' fourth element.  The

Court will therefore deny Guerrero's motion to dismiss on these grounds and address his claim of

qualified immunity.

### 2. A.    Guerrero's claim for Qualified Immunity

Guerrero argues entitlement to qualified immunity by repeating his claim that  he did not act

with deliberate indifference.  As the Court has rejected this argument, the Court must determine

whether his actions violated clearly established law at the time of his misconduct and whether his

actions were "objectively reasonable" in light of this law.  Breidenbach, 126 F.3d at 1291.  The Court

finds the law regarding supervisory liability in context of teacher/student abuse clearly established as

early as 1989, as evident by Stoneking, and the Tenth Circuit's recognition of that holding in D.T. by

M.T., 894 F.2d at 1189.  See also Doe v. Taylor Independent Sch. Dist., 15 F.3d at 455.  Those cases

also analogize a school supervisor's liability for deliberate indifference to misconduct to that of a

supervisory police officer.  Stoneking,  882 F.2d at 730.  Under that analogy, the Third Circuit in

1981 recognized that an administrator's policy of curtailing investigation of complaints brought to

the administrator's attention, intimidation of complainants, and/or defense of subordinates charged

with misconduct was sufficient to constitute a custom or practice under Monell.  Commonwealth of

Pa. v. Porter, 659 F.2d 306, 309 (3d Cir. 1981).  The Tenth Circuit in 1979 also recognized such a

cause of action under McClelland v. Facteau, 610 F.2d 693, 697-98 (10th Cir. 1979) (police chiefs

may be held liable for failure to correct misconduct of which they have notice).  Under the second

prong, the Court finds that Guerrero's conduct was not objectively reasonable in light of this law.

As noted *supra*, his conduct as alleged in the complaint shows deliberate indifference to Plaintiff's

constitutional rights.  The Court also finds his actions could be construed as affirmative steps to

conceal Villareal's sexual misconduct, and by taking limited or no action, he ensured the abuse would

continue.  The Court will therefore deny Guerrero's claim of qualified immunity.

### 2. B.   Plaintiff's claim of deliberate indifference against Jaramillo

Where Plaintiff's complaint details Guerrero's affirmative actions in concealing or failing to

halt Villareal's sexual misconduct despite the likelihood of further abuse, her claim against Jaramillo

fails on these grounds.  Under the heightened pleading standards required in Breidenbach v. Bolish,

126 F.3d 1288, 1293 (10th Cir. 1997)[4], the Court finds the complaint lacks sufficient allegations to

show that Jaramillo acted with deliberate indifference as required under Gates' second element.

Plaintiff's complaint alleges only that Jaramillo received a letter from Plaintiff, but deletes the

_____

[4]

      In Breidenbach, the Tenth Circuit rejected Plaintiff's argument that the Supreme Court altered
this heightened pleading requirement regarding civil rights actions against individual officers in its
decision in Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S.
163, 166 (1993). Id. at 1293, fn. 2.

information contained in that letter--crucial to justify a claim of deliberate indifference. Further, Plaintiff only makes the bare allegation that Jaramillo knew of complaints by other students of Villareal's sexual misconduct.  Plaintiff also admits that Jaramillo did react by hiring a private investigator without alleging what the investigator found or whether those findings warranted additional action.[5] These allegations do not support a finding that Jaramillo's inaction would result in a "substantial likelihood" the abuse would continue.  Neither do they show affirmative acts on which Plaintiff could base a claim of toleration, condonation, or encouragement of sexual harassment by teachers which occurred in one of the various schools of his district.  Stoneking, 882 F.2d at 731. At best, Jaramillo's acts amount to "mere inaction and insensitivity."  Id.  As a result, the Court will dismiss Plaintiff's complaint against Jaramillo for failing to investigate Villareal's misconduct.

Similarly, the Court finds the complaint contains insufficient allegations to support a claim against Villareal and Guerrero for failing to properly screen, hire or fire Villareal for sexual abuse. See  D.T. by M.T., 894 F.2d at 1189 (acts of molestation by teacher three years after hiring too remote a consequence of hiring and investigation policy to impose liability on the school district). The Court will therefore dismiss Jaramillo and Guerrero as to those claims.

### 3.      Plaintiff's § 1983 claim against the School Board and School District

After finding Plaintiff states a claim of constitutional violations by Guerrero and Villareal, the Court must now address Plaintiff's claim of municipal liability.  Plaintiff cannot base her claim against

---

[5]

The fact that Jaramillo initiated an investigation strongly supports his claim of qualified immunity if the Court were to find him liable as an individual supervisor.  Under that analysis, his conduct is "objectively reasonable" in light of clearly established law.  See D.T. by M.T., 894 F.2d at 1189 (clearly established law requires affirmative acts of toleration, condonation or encouragement of sexual harassment).

the School District and Board solely on the conduct of Defendants Guerrero and Villareal because respondeat superior is not available as a theory of recovery. Monell v. Dep't. of Social Servs., 436 U.S. 658, 691 (1978). Under Monell, the School District and Board cannot be found liable unless the Plaintiff can establish that an officially executed policy, or the toleration of a custom within the School District leads to, causes, or results in the deprivation of a constitutional right. Id., 436 U.S. at 690-91. Just as the existence of a constitutional right must be the threshold determination in any section 1983 claim, the finding of a custom or policy is the initial determination to be made in any municipal liability claim. Doe v. Claiborne County, 103 F.3d at 509. A custom must 'be so permanent and well settled as to constitute a custom or usage with the force of law." Monell, 436 U.S. at 691. On the other hand, a "policy" is a deliberate choice of action with respect to the subject matter in question. D.T. by M.T., 894 F.2d at 1187.

To state a municipal liability claim under an "inaction theory," Plaintiff must establish: (1) the existence of a clear and persistent pattern of sexual abuse by school employees; (2) notice or constructive notice on the part of the Board; (3) the Board's tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and (4) that the Board's custom or policy was the "moving force" or direct causal link in the constitutional deprivation. Doe v. Claiborne County, 103 F.3d at 508 (citations omitted). The evidence must show that the need to act is so obvious that the Board's "conscious" decision not to act can be said to amount to a policy of deliberate indifference to Plaintiff's constitutional rights. Id. (citing City of Canton v. Harris, 489 U.S. 378, 389 (1989)).

Plaintiff alleges superintendent Jaramillo was the policy-making official for matters concerning the retention, promotion, training, supervision and discipline of the employees of Mesa Vista High

School and that the Board, through Jaramillo, had actual knowledge of Villareal's prior misconduct. Based on this knowledge, Plaintiff alleges the Board's failure to act showed deliberate indifference to her constitutional rights. The Board counters that it did not have knowledge of a sufficient number of complaints of sexual misconduct to establish a policy or custom of inaction.  As such, the Board argues Plaintiff's allegations do not meet Doe v. Claiborne County's third and fourth elements.

The Court agrees. The complaint fails to establish that the Board and School District violated an established custom or policy.  There are no allegations to support a pattern of misconduct that had become so permanent and well settled as to have the effect and force of law. Jane Doe "A" v. Special Sch. Dist. of St. Louis County, 901 F.2d 642, 646 (8th Cir. 1990). As to a policy of inaction, the allegations lack sufficient specificity to show the Board had an obvious need to act and its failure to do so resulted in deliberate indifference. Further, after reviewing Plaintiff's factual allegations, the Court cannot determine whether a "substantial likelihood" existed that Villareal would abuse Plaintiff based on what the Board knew.  Finally, Plaintiff's allegations that the Board improperly hired Villareal or failed to fire him do not show the requisite causal nexus between policy and constitutional deprivation under Doe v. Claiborne County's fourth element.  See also D.T.by M.T., 894 F.2d at 1189. The Court will therefore dismiss Plaintiff's claims of municipal liability under § 1983 against the Board and School District.

The Court also notes that pursuant to the Due Process Clause, Plaintiff alleges that she had a constitutional liberty interest in freedom of sexual misconduct by teachers while she was in the custody of the School District under the compulsory attendance laws of New Mexico.  Although not entirely clear, Plaintiff may be alleging the School District had a constitutional duty to protect her from Villareal's sexual abuse as a result of the "special relationship" created by the compulsory

attendance laws.  The existence of this duty would not require Plaintiff to prove a custom or policy

for municipal liability to apply. Doe v. Claiborne County, 103 F.3d at 509.  The Tenth Circuit rejected

this argument in Maldonado v. Josey, 975 F.2d 727, 732-33 (10th Cir. 1992) (holding compulsory

attendance laws do not sufficiently restrain students to raise a school's common law obligation to the

level of a constitutional duty).  See also J.O. v. Alton Community Unit Sch. Dist. 11, 909 F.2d 267,

271-72 (7th Cir. 1990).  The Court will therefore dismiss Plaintiff's claims of municipal liability

against the School District and Board on this theory.

The Court will also dismiss the official capacity claims under § 1983 against Defendants

Jaramillo, Guerrero and Villareal because a suit against an official of the state is treated as a suit

against the municipality.  Kentucky v. Graham, 473 U.S. 159, 165-66 (1985).

### III.    Conclusion

The Court will deny all Defendants' claims of Eleventh Amendment Immunity. The Court will

grant Defendant Villareal's July 25, 1997 motion to dismiss (Doc. 37) Plaintiff's Title IX claim in

Count I, and the claims against him in his official capacity in Count II and Count III.  The Court will

deny Defendant Villareal's motion to dismiss Count IV, Plaintiff's claim of battery.  The Court will

also deny Defendant Villareal's motion to dismiss based on qualified immunity under 42 U.S.C. §

1983, finding Plaintiff alleges sufficient facts that Defendant Villareal violated her constitutional rights

to equal protection and due process.  The Court will grant Defendant Guerrero's June 11, 1997

motion to dismiss Count I, (Doc. 25) and the claims against him in his official capacity in Count II

and Count III.  The Court will deny Defendant Guerrero's motion to dismiss Count II and Count III,

finding Plaintiff alleges sufficient facts to support supervisory liability through Guerrero's deliberate

indifference to Plaintiff's constitutional rights of due process and equal protection.  The Court will

grant Defendant Jaramillo's April 24, 1997 motion to dismiss Counts I, II, and III (Doc. 16), finding

no individual liability under Title IX and that Plaintiff's allegations do not support a claim of

supervisory liability under 42 U.S.C. § 1983.  The Court will grant the School District and Board's

April 24, 1997 motion to dismiss (Doc. 16) Plaintiff's 42 U.S.C. § 1983 claims in Counts II and III,

finding insufficient allegations of municipal liability.  The Court will deny the School District and

Board's motion to dismiss Count I, finding these entities may be liable under Title IX for the actions

of its teachers and school administrators.

An order in accordance with this opinion shall be entered.

DATED December 18, 1997.

UNITED STATES DISTRICT JUDGE